## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

NERIS MONTILLA, RUBEN VELASQUEZ, ROSELIA MONTUFAR, MICHAEL KYRIAKAKIS, On behalf of themselves and all others so similarly situated,

                  Plaintiffs,

    v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL HOUSING FINANCE AGENCY, SETERUS, INC., C.I.T. BANK, N.A., MR. COOPER F/K/A NATIONSTAR MORTGAGE, LLC,

                  Defendants.

Civil Action No 1:18-CV-00632

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT
## FEDERAL NATIONAL MORTGAGE ASSOCIATION

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT | | 2 |
| | A. | Nonjudicial Foreclosure in Rhode Island | 2 |
| | | 1. Notice provided before the foreclosure sale. | 2 |
| | | 2. Borrowers' opportunities to seek to avoid the foreclosure before the date of the foreclosure sale. | 5 |
| | B. | Plaintiffs' Foreclosures | 6 |
| | | 1. The Kyriakakis Foreclosure | 7 |
| | | 2. The Velasquez and Montufar Foreclosure | 7 |
| | | 3. The Montilla Foreclosure | 8 |
| | C. | Plaintiffs' Complaint | 9 |
| III. | ARGUMENT | | 10 |
| | A. | Plaintiffs' Claims Fail Because Fannie Mae Is Not a Government Actor | 10 |
| | B. | Plaintiffs' Procedural Due Process Claims Fail As a Matter of Law | 10 |
| | C. | Plaintiffs' Claims Should Be Dismissed for Additional Reasons | 15 |
| | | 1. *Rooker-Feldman* bars the Court from hearing Montufar and Velasquez's claim. | 15 |
| | | 2. Res Judicata bars Montufar and Velasquez's claim because they had the opportunity to litigate the validity of the foreclosure in the contested eviction actions. | 17 |
| | | 3. Failure to name necessary and indispensable parties bars Montufar and Velasquez's claim | 21 |
| | | 4. Judicial Estoppel bars Kyriakakis's claim because he surrendered the property to his creditor as part of a bankruptcy petition and to obtain discharge of debt. | 22 |
| IV. | CONCLUSION | | 24 |

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,*
    267 F.3d 30 (1st Cir. 2001) ............................................................................................ 3

*Anderson Nat'l Bank v. Luckett,*
    321 U.S. 233 (1944) ...................................................................................................... 10

*Bellot v. Wells Fargo Bank,*
    N.A., No. H-13-2014, 2014 U.S. Dist. LEXIS 73878 (S.D. Tex. May 13, 2014) ............ 19

*Bowman v. U.S. Bank Nat'l Ass'n,*
    C.A. No. 1:12-cv-04263, 2013 U.S. Dist. LEXIS 149660 (N.D. Ga. Aug. 1, 2013) ...... 24

*Carada, Limited v. McAuliffe,*
    No. 92-CV-0465E(F), 1993 WL 117525 (W.D.N.Y. Apr. 6, 1993) ................................ 13

*Cherry v. Heckler,*
    760 F.2d 1186 (11th Cir. 1985) .................................................................................... 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005) ...................................................................................................... 15

*Failla v. Citibank,*
    838 F.3d 1170 (11th Cir. 2016) .................................................................................... 24

*Figueroa v. MERSCORP, Inc.,*
    766 F. Supp. 2d 1305 (S.D. Fla. 2011) ........................................................................ 16

*United States v. Ford,*
    551 F. Supp. 1101 (N.D. Miss. 1982) .......................................................................... 14

*Garcia v. Fed. Nat'l Mortg. Ass'n,*
    782 F.3d 736 (6th Cir. 2015) ............................................................................ 10, 11, 12

*Haag v. United States,*
    589 F.3d 43 (1st Cir. 2009) .......................................................................................... 18

*Hoffman v. U.S. Dep't of Hous. & Urban Dev.,*
    519 F.2d 1160 (5th Cir. 1975) ...................................................................................... 14

*Ibanez v. U.S. Bank Nat'l Ass'n,*
    856 F. Supp. 2d 273 (D. Mass. 2012) .......................................................................... 24

*In Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................... 10

*In re Colonial Mortg. Bankers Corp.*,
    324 F.3d 12 (1st Cir. 2003) ...................................................................................... 18

*Johnson v. SCA Disposal Servs. of New England, Inc.*,
    931 F.2d 970 (1st Cir. 1991) .................................................................................... 18

*Klimowicz v. Deutsche Bank Nat'l Trust Co.*,
    907 F.3d 61 (1st Cir. 2018) ........................................................................... 15, 16, 17

*Knowlton v. Shaw*,
    704 F.3d 1 (1st Cir. 2013) ........................................................................................ 22

*Koolen v. Mortg. Elec. Reg. Sys., Inc.*,
    953 F. Supp. 2d 348 (D.R.I. 2013) .......................................................................... 20

*Lisbon Square v. United States*,
    856 F. Supp. 482 (E.D. Wis. 1994) ......................................................................... 14

*Lister v. Bank of Am., N.A.*,
    790 F.3d 20 (1st Cir. 2015) ........................................................................................ 3

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ............................................................................................ 22, 23

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................................. 10

*Mennonite Bd. of Missions v. Adams*,
    462 U.S. 791 (1983) ................................................................................................. 10

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) ................................................................................................. 10

*Pemental v. Bank of N.Y. Mellon for Holders of Certificates, First Horizon Mortg. Pass-Through
    Certificates Series FHAMS 2004-AA5*,
    No. CV 16-483S, 2017 WL 3279015 (D.R.I. May 10, 2017), *report and
    recommendation adopted sub nom. Pemental v. Bank of N.Y. Mellon*, No. CV 16-483S,
    2017 WL 3278872 (D.R.I. Aug. 1, 2017)................................................................... 4

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) ................................................................................................. 15

*Russo v. Baxter Healthcare Corp.*,
    919 F. Supp. 565 (D.R.I. 1996)................................................................................ 18

*Sain v. Geske,*
  No. CIV 07-4203 MJD/AJB, 2008 WL 2811166 (D. Minn. July 17, 2008) .................................. 13

*Saunders v. Rockville Bank,*
  C.A. No. 3:13-CV-01612, 2014 U.S. Dist. LEXIS 184582 (D. Conn. Sept. 10,
  2014) .................................................................................................................................................... 16

*Sexual Minorities Uganda v. Lively,*
  899 F.3d 24 (1st Cir. 2018) ............................................................................................................ 22

*Showell v. BAC Home Loans Servicing, LP,*
  No. 4:11-CV-00489-CWD, 2012 WL 4105472 (D. Idaho Sept. 17, 2012) .................................. 13

*Stamatakos v. Wells Fargo Bank, Nat'l Ass'n,*
  No. CV 17-62S, 2017 WL 2635291 (D.R.I. Apr. 20, 2017), *report and
  recommendation adopted sub nom. Stamatakos v. U.S. Bank Ass'n,* No. CV 17-062 S,
  2017 WL 2633497 (D.R.I. June 19, 2017) ...................................................................................... 6

*In re Stanley,*
  152 B.R. 416 (Bankr. D.R.I. 1993) ................................................................................................ 21

*Syriani v. Freddie Mac Multiclass Certificates, Series 3365,*
  No. CV 12-3035-JFW JEMX, 2012 WL 6200251 (C.D. Cal. July 10, 2012) .............................. 12

*Taylor v. Fannie Mae,*
  374 F.3d 529 (7th Cir. 2004) .......................................................................................................... 16

*Toth v. Wells Fargo Bank, N.A.,*
  82 F. Supp. 3d 373 (D.D.C. 2015) ................................................................................................ 16

*Vail v. Brown,*
  39 F.3d 08 (8th Cir. 1994) ........................................................................................................ 12, 13

*Viera v. Bank of N.Y. Mellon as Tr. for Certificate Holders of Cwalt, Inc.,*
  No. CV 17-0523-WES-PAS, 2018 WL 4964545 (D.R.I. Oct. 12, 2018) ..................................... 2, 3

*Watterson v. Page,*
  987 F.2d 1 (1st Cir. 1993) .............................................................................................................. 3

*Williams v. HSBC Bank USA, N.A.,*
  681 Fed. Appx. 693 (10th Cir. 2017) ............................................................................................ 16

*Young v. Ridley,*
  309 F. Supp. 1308 (D.D.C 1970) .................................................................................................. 10

*Z & B Enters., Inc. v. Tastee-Freez Int'l, Inc.,*
  162 Fed. Appx. 16 (1st Cir. 2006) ................................................................................................ 21

**State Cases**

*Bucci v. Lehman Bros. Bank, FSB,*
    68 A.3d 1069 (R.I. 2013)............................................................................................ 2, 6

*E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark,*
    635 A.2d 1181 (R.I. 1994) ......................................................................................... 18

*El Gabri v. Lekas,*
    681 A.2d 271 (R.I. 1996)............................................................................................. 18

*Fed. Nat. Mortg. Ass'n v. Malinou,*
    101 A.3d 860 (R.I. 2014)............................................................................................. 17

*Garganta v. Mobile Vill., Inc.,*
    730 A.2d 1 (R.I. 1999)........................................................................................... 20, 21

*Harris v. Turchetta,*
    622 A.2d 487 (R.I. 1993)............................................................................................ 17

*Lennon v. Dacomed Corp.,*
    901 A.2d 582 (R.I. 2006)...................................................................................... 19, 21

*Parra v Mortg. Electr. Registration Sys., Inc.,*
    No. PC 2011-1828, 2013 WL 1387030 (R.I. Super. Apr. 1, 2013) ............................ 6, 20

*Plunkett v. State,*
    869 A.2d 1185 (R.I. 2005) ........................................................................................ 20

*Reynolds v. First NLC Fin. Servs., LLC,*
    81 A.3d 1111 (R.I. 2014)............................................................................................ 18

*Rosano v. Mortg. Elec. Registration Sys., Inc.,*
    91 A.3d 336 (R.I. 2014)............................................................................................. 21

**Federal Statutes**

Multifamily Mortgage Foreclosure Act, 12 U.S.C. §§ 3701-3713.............................................. 13

**State Statutes**

R.I. Gen. Laws § 8-2-3 ............................................................................................................ 20

R.I. Gen. Laws § 9-30-1 ........................................................................................................... 20

R.I. Gen. Laws § 34-11-22 .................................................................................................... 2, 5

R.I. Gen. Laws § 34-18-38 ........................................................................................................ 6

R.I. Gen. Laws § 34-18.1-2 ....................................................................................................... 6

R.I. Gen. Laws § 34-27-3.1 ..................................................................................................3, 4, 8

R.I. Gen. Laws § 34-27-3.2 ...............................................................................................3, 4, 5, 9

R.I. Gen. Laws § 34-27-4..................................................................................................... 5, 8

R.I. Gen. Laws § 34-27, *et seq.* ............................................................................................ 9

2014 R.I. Pub. Laws, Chapter 543, § 2 ............................................................................. 3

**Rules**

Fed. R. Civ. P. 12..........................................................................................................21, 22

Fed. R. Civ. P. 19..........................................................................................................21, 22

**Constitutional Provisions**

U.S. Const. amend. V.............................................................................................. 9, 10, 12, 20

**Additional Authorities**

Providence, R.I. Code of Ordinances ch. 41, No. 340, § 13-216(c) (July 27, 2009) ................................ 5

Providence, R.I. Code of Ordinances art. IV § 13-22 (Apr. 10, 2018) ....................................................... 5

I.     **INTRODUCTION**

Plaintiffs' federal constitutional challenge to the statutorily-authorized foreclosures of their properties should be dismissed for several reasons.  *First*, for reasons more fully set forth in the brief of Defendant Federal Housing Finance Agency ("FHFA"), which Defendant Federal National Mortgage Association ("Fannie Mae") joins, Fannie Mae and, by extension, its servicers Defendants Seterus, Inc. ("Seterus"), CIT Bank, Inc. ("CIT"), and Mr. Cooper are not government actors.  They accordingly are not subject to the restrictions of the United States Constitution in conducting foreclosures.  *Second*, Plaintiffs fail in any event to state a claim on the merits for a violation of the Due Process Clause.  Over the past two decades, federal courts have repeatedly rejected due process challenges like those asserted by Plaintiffs here to nonjudicial foreclosure, including specifically to nonjudicial foreclosure by Fannie Mae.  Plaintiffs all agreed in their mortgages to statutorily-authorized power-of-sale clauses granting their mortgagees the right to sell their properties in the event of default, Plaintiffs all admit having received the statutorily-prescribed advance notice of those foreclosure sales, and all had opportunities under Rhode Island law to seek to avoid their foreclosures, including in a judicial hearing to challenge their foreclosures.  As such, they have no constitutional due process claim.

Finally, several of the individual Plaintiffs' claims are barred by individualized defenses applying to each.  Mr. Kyriakakis's claims are barred by judicial estoppel because he surrendered his property to his creditor to obtain a discharge of debt in a bankruptcy proceeding.  Ms. Montufar and Mr. Velasquez's claims are barred for two reasons, both arising from the fact that they already had the opportunity to litigate their claims in state-law eviction proceedings to which they were parties. The judgments in those cases bar their claims here under both the *Rooker-Feldman* doctrine and the law of res judicata.  Ms. Montufar and Mr. Velasquez's claims also should be dismissed for failure to join a necessary party, namely, the later purchaser of their property.

## II.   STATEMENT

### A.   Nonjudicial Foreclosure in Rhode Island

Plaintiffs challenge Defendants' employment of nonjudicial foreclosure, a process that has existed in Rhode Island for over a century. *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1085 (R.I. 2013) (citing *Thurber v. Carpenter*, 31 A. 5, 6 (R.I. 1895)). To foreclose nonjudicially, the mortgagee exercises a power of sale provided for in the mortgage agreement. *See* R.I. Gen. Laws § 34-11-22. The power-of-sale clause is a provision through which the mortgagor, as a matter of agreement, grants the mortgagee authority to sell the property securing the loan in the event of a default. *E.g., Bucci*, 68 A.3d at 1084-85. In Rhode Island, the nonjudicial foreclosure process is based in statute and the mortgage agreement itself, both of which contain numerous protections for mortgagors like Plaintiffs.

### 1.   Notice provided before the foreclosure sale.

Before a mortgagee can avail itself of the statutory power of sale, Rhode Island requires the mortgagee to provide the mortgagor a series of notices, through which the mortgagor is afforded time and opportunity to mediate the dispute over the real-estate-secured debt, to cure any default, to challenge the foreclosure in court, or to participate in the foreclosure sale itself.

*First*, before a mortgagee can foreclose, the mortgagee must provide the mortgagor a notice of default. This notice requirement is based in the mortgage agreement and enforced as a matter of state law. *See, e.g., Viera v. Bank of N.Y. Mellon as Tr. for Certificate Holders of Cwalt, Inc.*, No. CV 17-0523-WES-PAS, 2018 WL 4964545, at *2 (D.R.I. Oct. 12, 2018). The contractual basis for the requirement of notice of default is a provision commonly referred to as Paragraph 22—referred to as such because the provision is paragraph 22 of the standard mortgage agreement used for Fannie Mae loans. Before the mortgagee can accelerate the debt and sell the property securing the debt, Paragraph 22 requires the mortgagee to, among other things, provide the mortgagor notice of (1) the

default, (2) the action required to cure the default, (3) a date not less than 30 days from the notice by which the default must be cured, and (4) that failure to cure the default may result in acceleration of the amount due and sale of the property securing the loan.  Paragraph 22 also requires the mortgagee to notify the mortgagor of his or her right to bring an action in court to dispute the default or raise any other defenses to the acceleration of the debt and sale of the property.  *E.g.,* Decl. of Ethan Z. Tieger in Support of Defendant Federal National Mortgage Association's Motion to Dismiss ("Tieger Decl."), Ex. A (Kyriakakis Mortgage) ¶ 22 . [1, 2]

*Second,* Rhode Island law requires the mortgagee, before initiating a foreclosure sale, to provide residential borrowers with notice of the opportunity to hold a mediation conference concerning the default.  *See* R.I. Gen. Laws § 34-27-3.2(d).  The mediation notice must state that the mortgagee cannot "foreclose on the mortgaged property without first participating in a mediation conference," and the notice must be delivered to the mortgaged property and any other address designated by the mortgagor for notice within the first 120 days that a mortgage is delinquent.  *Id.*

If the mortgagor chooses to participate in the mediation conference, it occurs within 60 days at a place convenient for both parties.  R.I. Gen. Laws § 34-27-3.2(f).  The conference is overseen by

---

[1] Plaintiffs' Amended Complaint refers to their mortgages and the foreclosure deeds related to each of their foreclosures.  *See* Am. Compl. ¶¶ 53, 57, 64, 67, 74, 78.  While a court's review on a motion to dismiss is generally limited to the complaint and any attached documents, the First Circuit has acknowledged several exceptions to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).  In *Lister v. Bank of Am., N.A.,* 790 F.3d 20 (1st Cir. 2015), the First Circuit approved the district court's consideration of certain land records that were appended to the defendants' motions to dismiss because the records were expressly referred to in plaintiff's complaint.  *Id.* at 22 n.2; *see also, e.g., Viera,* 2018 WL 4964545, at *5 n.4 (acknowledging authority to review official public records, documents central to a claim, or documents adequately referenced in a complaint).  Review of matters of public record or documents incorporated by reference into a plaintiff's complaint will not convert a motion into summary judgment.  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).

[2] Prior to its repeal in 2014, R.I. Gen. Laws § 34-27-3.1 also separately required notice of default.  More specifically, the statute mandated that, at least 45 days before initiating a statutory foreclosure sale, the mortgagee must provide the mortgagor with notice of default and the right to foreclose.  *Id.* § 34-27-3.1(a).  Section 34-27-3.1 was repealed in October 2014.  *See* 2014 R.I. Pub. Laws, ch. 543, § 2, eff. Oct. 6, 2014.

a mediation coordinator "employed by a HUD-approved independent counseling agency." *Id.* During the mediation, the parties can seek to negotiate a loan modification, thereby avoiding foreclosure. *See id.* § 34-27-3.2(i). If the parties are unable to reach agreement, and the mortgagee has engaged in a good-faith effort to mediate, the mediation coordinator issues a certificate authorizing the mortgagee to proceed with a foreclosure. *Id.* § 34-27-3.2(h). If the mortgagor fails to respond to two notices from the mediation coordinator, or if the mortgagor otherwise fails to cooperate, then the statutory requirement for the mediation conference is satisfied. Once the mediation coordinator verifies that the required notice was sent, the coordinator issues a certificate that authorizes the mortgagee to proceed with a foreclosure. R.I. Gen. Laws § 34-27-3.2(g).

While this notice-of-mediation requirement applies only to defaults occurring after May 16, 2013,[3] Rhode Island law imposed a notice-of-counseling requirement for defaults before that date. During that time period, when the Rhode Island law required mortgagees by statute to send a notice of default (*see supra* p.3 n.2), the notice was required to contain information about the availability of no-cost counseling through agencies approved by the United States Department of Housing and Urban Development ("HUD"), along with a telephone number and website that would give the mortgagor access to information concerning HUD-approved Rhode Island mortgage counseling services. *See* R.I. Gen. Laws § 34-27-3.1(b).

*Third*, if the mediation fails, the mortgagor fails to respond to the notices of mediation, or the mortgage is not subject to the statutory mediation requirement, and the mortgagee wishes to proceed to foreclosure, then the mortgagee must provide another notice before exercising the power of sale. Rhode Island law requires the mortgagee, in these circumstances, to provide notice of the

---

[3] *See Pemental v. Bank of N.Y. Mellon for Holders of Certificates, First Horizon Mortg. Pass-Through Certificates Series FHAMS 2004-AA5*, No. CV 16-483S, 2017 WL 3279015, at *1 n.1 (D.R.I. May 10, 2017), *report and recommendation adopted sub nom. Pemental v. Bank of N.Y. Mellon*, No. CV 16-483S, 2017 WL 3278872 (D.R.I. Aug. 1, 2017). Section 34-27-3.2 does not apply to reverse mortgages. R.I. Gen. Laws § 34-27-3.2(o)(1).

foreclosure sale both by publication and mail. *Id.* §§ 34-11-22, 34-27-4(a)-(b). The written notice must state the time and location of the sale and must be sent to the property at issue and any other address that the mortgagor has designated for notice or listed with the tax assessor's office. *Id.* § 34-27-4(b).

> ### 2.   Borrowers' opportunities to seek to avoid the foreclosure before the date of the foreclosure sale.

Having been afforded several notices—both of default and of the foreclosure sale—a Rhode Island mortgagor has multiple opportunities to present her position in an effort to avoid foreclosure. *First*, depending on the date of the default, mortgagors have access to counseling services or mediation. For example, in the statutorily-required mediation process applicable to defaults after May 16, 2013, the mortgagor can present her position before an official employed by a HUD-approved counseling agency and seek to negotiate a loan modification to avoid foreclosure. *See supra* pp.3-4. And if the mortgagor objects to the manner of the mediation, she may file a statutory claim for noncompliance with the mediation conference requirements. R.I. Gen. Laws § 34-27-3.2(p).[4]

*Second*, a mortgagor who disputes the basis for the foreclosure may seek a judicial hearing before the foreclosure sale takes place. As noted in Paragraph 22 of Fannie Mae's standard mortgage agreement, and as further explained in the notices of default sent to a mortgagor pursuant to that provision, the mortgagor has a "right to bring a court action to assert the non-existence of a

---

[4] For a mortgaged property located in Providence, such as the properties owned by Plaintiffs Velasquez, Montufar, and Montilla, Providence ordinance provides further protection. The City of Providence requires mortgagors and mortgagees to participate in a "mandatory loan/mortgage conciliation conference" after the mortgagee issues the notice of intent to foreclose to the mortgagor. Providence, R.I. Code of Ordinances ch. 41, No. 340, § 13-216(c) (July 27, 2009). Prior to the conference, a HUD-approved counseling agency will assign a "conciliation conference coordinator" to the mortgagor. *Id.* §§ 13-213 & 13-216(e). The parties are required at the conciliation conference to attempt in good faith to "re-negotiate the terms of the loan in an effort to avoid foreclosure." *Id.* § 13-216(i). If the mortgagor does not respond to two requests by the conference coordinator to appear at the conference, the HUD-approved agency will verify that the required notices were sent and issue a certificate authorizing the mortgagee to proceed with the foreclosure. *Id.* §§ 13-216(h). Following foreclosure, the certificate of compliance is recorded with the foreclosure deed. The conciliation conference requirement is now codified at Providence, R.I. Code of Ordinances art. IV § 13-22 (Apr. 10, 2018).

default or any other defense of Borrower to acceleration or sale." *See, e.g.*, Tieger Decl., Ex. A
(Kyriakakis Mortgage) ¶ 22. For example, the mortgagor can file an action challenging the default or
foreclosure sale through a breach-of-contract or statutory claim, and in such action can seek a
declaratory judgment, injunctive relief, and damages. *See Bucci*, 68 A.3d at 1072, 1084–85.

   *Third*, following a foreclosure, a mortgagor who remains in possession of the property can be
ordered to leave only following notice to quit and initiation of an eviction action, in which the
mortgagor may assert defenses to the previous foreclosure. *See* R.I. Gen. Laws §§ 34-18-38, 34-18.1-
2; *see also Stamatakos v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 17-62S, 2017 WL 2635291, at *1 (D.R.I.
Apr. 20, 2017), *report and recommendation adopted sub nom. Stamatakos v. U.S. Bank Ass'n*, No. CV 17-
062 S, 2017 WL 2633497 (D.R.I. June 19, 2017). Prior to commencing an eviction action, a
mortgagee must provide the resident notice to quit in writing. R.I. Gen. Laws § 34-18.1-2. To
commence an eviction action, the mortgagee must then file a complaint and serve a summons that
states that the resident may raise any defenses in her answer. *Id.* §§ 34-18-38(a)-(b), 34-18-56(h).
The resident has twenty days to respond to the summons. *Id.* § 34-18-56(h). In the eviction action,
the resident may present any defenses that she had to the foreclosure itself, including disputing the
debt or other grounds for foreclosure. *See id.* § 34-28-56(h); *Parra v Mortg. Elec. Registration Sys., Inc.*,
No. PC 2011-1828, 2013 WL 1387030, at *3 (R.I. Super. Apr. 1, 2013). Thus, an eviction
proceeding provides another opportunity for the mortgagor to be heard on any foreclosure defenses
she wishes to raise.

   **B.     Plaintiffs' Foreclosures**

   Plaintiffs not only acknowledge, but in fact affirmatively allege, that they received notice of
the foreclosure sales of their properties. Am. Compl. ¶¶ 56, 66, 77. All had the opportunity to seek
a judicial hearing before those sales took place. None alleges that he or she took that opportunity.

Instead, Plaintiffs now bring this post-foreclosure lawsuit, in some cases many years after the fact, challenging their foreclosures on federal constitutional grounds.

### 1.     The Kyriakakis Foreclosure

Plaintiff Michael Kyriakakis alleges that in April 2013 he entered into a mortgage agreement with respect to real property in Cranston, Rhode Island ("Kyriakakis Property"). Am. Compl. ¶¶ 73-74. He further alleges that Mr. Cooper, the servicer of the loan, conducted a foreclosure sale of the property on December 26, 2017, whereby the property was sold to Fannie Mae and a deed of foreclosure was recorded. *Id.* ¶ 78. Mr. Kyriakakis admits that he received actual notice of the foreclosure sale on or about November 21, 2017, which notice informed him that the starting sale date would be December 26, 2017. *Id.* ¶ 77.

The foreclosure deed recorded with respect to the Kyriakakis Property confirms that such notice was given, as well as several other notices. *See* Tieger Decl., Ex. B (Kyriakakis Foreclosure Deed) at 5-6, 8-9, 11. This included notice of the default, two notices of the opportunity for a mediation conference, and both publication and written notice of the foreclosure sale. *Id.* Notwithstanding such notices, Mr. Kyriakakis does not allege that he availed himself of his opportunities for a hearing, neither alleging that he responded to the mediation notices nor that he filed any pre-foreclosure action in court before the sale of his property.

### 2.     The Velasquez and Montufar Foreclosure

Plaintiffs Ruben Velasquez and Roselia Montufar allege that in November 2004 they entered into a mortgage agreement with respect to real property in Providence, Rhode Island ("Velasquez Montufar Property"). Am. Compl. ¶¶ 63-64. Plaintiffs Velasquez and Montufar further allege that Seterus, the servicer of the mortgage, conducted a foreclosure sale of the property on May 16, 2014, whereby the property was sold to Fannie Mae and a deed of foreclosure was recorded. *Id.* ¶ 67. Plaintiffs Velasquez and Montufar admit that they received actual notice of the foreclosure sale on

or about April 10, 2014, through a Notice of Intent to Foreclose and Mortgagee's Foreclosure Sale in accordance with the Rhode Island nonjudicial foreclosure statute, R.I. Gen. Laws § 34-27-4. *Id.* ¶ 66. The notice stated that the starting sale date would be May 16, 2014. *Id.*

The foreclosure deed recorded with respect to the Velasquez Montufar Property confirms that this notice was given, as well as other notice. *See* Tieger Decl., Ex. C (Velasquez Montufar Foreclosure Deed) at 5-6, 8, 10-11. This included notice in January 2014 of both their default and the availability of no-cost counseling services through HUD-approved agencies, pursuant to R.I. Gen. Laws § 34-27-3.1. Ex. C at 8. This also included both publication and written notice of the foreclosure sale. Ex. C at 5-6. This also included, pursuant to the Providence Code of Ordinances, twice having been contacted by a conciliation coordinator of Rhode Island Housing to participate in a mandatory conciliation conference, to which Plaintiffs failed to respond. *See* Ex. C at 10-11. Notwithstanding such notices and contact, Mr. Velasquez and Ms. Montufar do not allege that they availed themselves of their opportunities for a hearing; they do not allege that they availed themselves of any conference or counseling opportunities or that they filed any pre-foreclosure action in court before the sale of their property.

### 3.    The Montilla Foreclosure

Plaintiff Neris Montilla alleges that in July 2008 she entered into a mortgage with respect to real property in Providence, Rhode Island ("Montilla Property"). Am. Compl. ¶¶ 52-53. She further alleges that CIT, the servicer of the mortgage, conducted a foreclosure sale of the property on October 14, 2016, whereby the property was sold to Fannie Mae and a deed of foreclosure was recorded. *Id.* ¶ 57. Ms. Montilla admits that she received actual notice on or about September 10, 2016 through a mailed Notice of Intent to Foreclose and Mortgagee's Foreclosure Sale in accordance with the Rhode Island nonjudicial foreclosure statute, R.I. Gen. Laws § 34-27-4. *Id.* ¶ 56. The notice informed her that the starting sale date would be October 14, 2016. *Id.*

The foreclosure deed recorded with respect to the Montilla Property confirms that this notice was given, as well as other notice.  *See* Tieger Decl., Ex. D (Montilla Foreclosure Deed) at 5-6, 10-13.  This included notice of default and both publication and written notice of the foreclosure sale.  Ex. D at 5-6.  And, while no mediation conference was required by Rhode Island statute because Ms. Montilla had a reverse mortgage, *see* R.I. Gen. Laws § 34-27-3.2(o)(1), the foreclosure deed confirms that Ms. Montilla was twice contacted by a conciliation coordinator of Rhode Island Housing to participate in a mandatory conciliation conference and failed to respond.  Ex. D at 10-13.  Notwithstanding such notices, Ms. Montilla does not allege that she availed herself of her opportunities for a hearing; she does not allege that she availed herself of any conciliation conference or that she filed any pre-foreclosure action in court before the sale of her property.

### C.      Plaintiffs' Complaint

Plaintiffs now bring this action on behalf of a purported class of similarly situated borrowers whose properties were sold through nonjudicial foreclosure sales since September 7, 2008.  Am. Compl. ¶ 84.  Plaintiffs assert that Rhode Island's nonjudicial foreclosure process violates the Fifth Amendment Due Process Clause by failing to require adequate notice and opportunity to be heard before the deprivation of property through foreclosure.  *Id.* ¶¶ 106-107.  Plaintiffs allege that the FHFA, Fannie Mae, and the servicers are government actors and, therefore, that when they conduct nonjudicial foreclosures pursuant to R.I. Gen. Laws § 34-27, *et seq.*, they engage in state action in violation of Plaintiffs' Fifth Amendment rights.  Am. Compl. ¶¶ 106-107.  Plaintiffs seek various remedies including damages; a declaratory judgment that the accelerations, foreclosures, and foreclosure sales violated the Due Process Clause of the Fifth Amendment and are void as a result; and injunctive relief preventing transfer of their properties.  *Id.* ¶¶ 119-123.

## III.    ARGUMENT

### A.    Plaintiffs' Claims Fail Because Fannie Mae Is Not a Government Actor

Plaintiffs' claims should be dismissed first because Fannie Mae is not a government actor, and accordingly neither Fannie Mae nor its servicers are subject to the restrictions of the Constitution when they conduct foreclosures. Rather than restating the points, Fannie Mae joins the arguments set forth in the brief of the FHFA on this issue.

### B.    Plaintiffs' Procedural Due Process Claims Fail As a Matter of Law

Plaintiffs' claims also should be dismissed because their allegations fail to state a claim for violation of the Fifth Amendment's Due Process Clause. Due process requires that before the government deprives an individual of property, the "State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (quoting *In Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "'(D)ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The government need not affirmatively require the state to proceed against an individual's property interests by means of a judicial hearing. *See Young v. Ridley*, 309 F. Supp. 1308, 1312–13 (D.D.C 1970). The Supreme Court has made clear that "it is not an indispensable requirement of due process that every procedure affecting the ownership or disposition of property be exclusively by judicial proceeding." *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 246 (1944). What is important is that the individual have an opportunity for a hearing. *See Young*, 309 F. Supp. at 1312–13. "Procedural due process at its core requires notice and an *opportunity* to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (emphasis added, internal quotation marks and citation omitted); *see also, e.g.*,

*Cherry v. Heckler*, 760 F.2d 1186, 1190 (11th Cir. 1985) ("Procedural due process requires only an *opportunity* to be heard 'at a meaningful time and in a meaningful manner.'" (emphasis added, citation omitted)).

Applying these principles, in a series of cases spanning over two decades, courts repeatedly have rejected procedural due process challenges to nonjudicial foreclosure.  By their holdings, the decisions make clear that the government need not affirmatively *require* that a hearing take place before foreclosure, through a judicial foreclosure proceeding.  Rather, due process requires that the government provide an affected individual notice and an *opportunity* to be heard with respect to the grounds for foreclosure.  So long as a state's nonjudicial foreclosure process requires such notice, affording the individual the opportunity to seek relief before the foreclosure or otherwise to participate in the foreclosure process, due process is satisfied.

In *Garcia v. Federal National Mortgage Ass'n*, 782 F.3d 736 (6th Cir. 2015), the Sixth Circuit rejected the plaintiffs' assertion that Fannie Mae's foreclosure sale of their property, utilizing Michigan's nonjudicial foreclosure processes, violated the Due Process Clause.  *Id.* at 737.  As is true in this case, the plaintiffs in *Garcia* "signed a mortgage and a note that allowed for the use of summary foreclosure proceedings in the event of default." *Id.* at 743.  And, as is true of the governing law in this case, under the Michigan law applicable in *Garcia*, the mortgagee (Fannie Mae) was required to provide notice of both the plaintiffs' default and the impending foreclosure sale. *Id.* at 741-42.  Moreover, as is also true of this case, the plaintiffs in *Garcia* admitted they had received actual notice of the foreclosure sale. *Id.* at 743.  The Sixth Circuit rejected the plaintiffs' due process challenge to the nonjudicial foreclosure sale of their property, holding that the plaintiffs' received

appropriate notice and that due process principles "do not require a preforeclosure judicial hearing." *Id.*[5]

Before *Garcia*, two federal district courts similarly rejected due process challenges to nonjudicial foreclosures. In *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, No. CV 12-3035-JFW JEMX, 2012 WL 6200251 (C.D. Cal. July 10, 2012), the district court considered a challenge to nonjudicial foreclosure by a different government-sponsored enterprise, Freddie Mac, under California's nonjudicial foreclosure procedures. *Id.* at *5. Again, as is the case here, under California law, the mortgagee was required to provide the mortgagor notice of both the default and the foreclosure sale. *Id.* As is also true here, the court noted that the plaintiff there admitted in her complaint that she had received actual notice of the foreclosure sale. *Id.* Citing the Eighth Circuit's decision in *Vail v. Brown*, 39 F.3d 208, 209 (8th Cir. 1994), the *Syriani* court held that "[a] foreclosure does not require a due process hearing if sufficient notice has been given." *Id.* The court therefore rejected the plaintiff's due process challenge, holding that "the non judicial statutory scheme in California provides sufficient notice for a borrower to participate in the foreclosure process and exercise his or her options[.]" *Id.* "Therefore, even if Freddie Mac was a governmental actor, Plaintiff could not state a Fifth Amendment Due Process claim based upon the foreclosure of her Property." *Id.*[6]

---

[5] While the Sixth Circuit also noted the availability of a redemption period following the foreclosure, during which the mortgagor could bring a court action for fraud or irregularity in the foreclosure process prejudicing the right to redeem, *Garcia*, 782 F.3d at 742, the court made clear that it found the Michigan nonjudicial foreclosure process to satisfy the Due Process Clause "*both*" as to the pre-foreclosure period (*i.e.*, "the period following notice of the default but prior to any sale of the property") "*and*" the post-foreclosure period (*i.e.*, the six months following the foreclosure), *id.* at 743 (emphasis added). In Rhode Island, mortgagors also have a means of presenting defenses to a foreclosure after the nonjudicial foreclosure sale and before being dispossessed of the property—namely, in an eviction hearing. *See supra* p.6.

[6] Before rejecting the merits of the plaintiff's due process challenge, the *Syriani* court also rejected the plaintiff's argument that Freddie Mac should be treated as a government actor for purposes of her constitutional challenge. *See Syriani*, 2012 WL 6200251 at *3-*4.

Almost two decades earlier, the district court in *Carada, Ltd. v. McAuliffe*, No. 92-CV-0465E(F), 1993 WL 117525 (W.D.N.Y. Apr. 6, 1993), rejected a plaintiff's challenge to a nonjudicial foreclosure on similar grounds. *Id.* at *5-6. There, the foreclosure was carried out by the United States Department of Housing and Urban Development. Pursuant to the terms of the note and the Multifamily Mortgage Foreclosure Act, 12 U.S.C. §§ 3701-3713, HUD provided notice to the mortgagor of both the default and the foreclosure sale. *Id.* at *3. As a result of those notices, the court found, the plaintiff received the "opportunity to present its reasons why it should be taken out of default and not be subjected to foreclosure." *Id.* at *5. For example, the court explained that "while the Act does not itself provide for a hearing after the service of the Notice of Default and Foreclosure and Sale and prior to foreclosure, any mortgagor who feels that HUD has wrongly foreclosed upon its mortgage can commence an action in court[.]" *Id.* at *6. The court accordingly rejected plaintiff's due process challenge to the nonjudicial foreclosure.

Other courts have rejected due process challenges to nonjudicial foreclosure on similar grounds. *See Vail v. Brown*, 39 F.3d 208, 209 (8th Cir. 1994) (holding that no hearing is required where "notice given … is fully sufficient to permit the veteran to participate in the foreclosure sale and to exercise his or her pre-foreclosure options" (internal quotation marks omitted)); *Showell v. BAC Home Loans Servicing, LP*, No. 4:11-CV-00489-CWD, 2012 WL 4105472, at *3 (D. Idaho Sept. 17, 2012) (holding that plaintiffs' due process rights were not violated where notice of foreclosure sale was given pursuant to Idaho's nonjudicial foreclosure statute). *Sain v. Geske*, No. CIV 07-4203 MJD/AJB, 2008 WL 2811166 at *14 (D. Minn. July 17, 2008) (holding that plaintiff's due process rights were not violated where notice of foreclosure sale was given pursuant to Minnesota's nonjudicial foreclosure statute). Together, the case law outlined here makes this principle clear: Nonjudicial foreclosure, accomplished by means of notice to the mortgagor of the foreclosure sale, satisfies the Due Process Clause.

Applying this law, it is clear that the Rhode Island nonjudicial foreclosure processes followed by Defendants here amply satisfy the Due Process Clause. As explained in the Statement section of this brief, in Rhode Island, notice is provided at multiple points before a foreclosure sale, including notice of the default and notice of the foreclosure sale itself. Moreover, here, Plaintiffs all admit that they received actual notice of the foreclosure sales of their properties more than a month in advance of those sales. Am. Compl. ¶¶ 56, 66, 77. Having received such notice, Plaintiffs had an opportunity to seek a hearing on any of the defenses they may have wanted to present to their foreclosures. They could have sought a judicial hearing to dispute that they had defaulted on their loans or to present any other foreclosure defenses by filing an action in court before the scheduled foreclosure sales. Yet Plaintiffs do not allege that they ever availed themselves of that opportunity. The notice they admit they received, and the opportunity it allowed them to seek a hearing before their foreclosures, is what the Due Process Clause requires.

Furthermore, by failing to allege that they ever took any action in response to notices that they admit they received, Plaintiffs have waived any due process argument that they may have had. Courts have held that a mortgagor who receives actual notice of a foreclosure sale, but takes no action in response, waives any Due Process Clause objection to the foreclosure. *See Hoffman v. U.S. Dep't of Hous. & Urban Dev.*, 519 F.2d 1160, 1165 (5th Cir. 1975) ("Assuming that due process would also require the federal government to give homeowners notice and an opportunity to be heard before foreclosing their home, we believe that plaintiffs in this case clearly waived their right to be heard by their failure to respond to the notices of delinquency sent monthly … by [the] agent of [the Government National Mortgage Association]."); *Lisbon Square v. United States*, 856 F. Supp. 482, 489 (E.D. Wis. 1994) ("A mortgagor who fails to respond to notices of delinquency waives the right to be heard."); *United States v. Ford*, 551 F. Supp. 1101, 1105-06 (N.D. Miss. 1982) (holding, in case involving Farmers Home Administration foreclosure, that plaintiffs "waived their right to a hearing

14

by failing to respond to notices [of default and foreclosure]" and "fail[ing] to take any action to seek a hearing and present reasons for having the foreclosure postponed"). Here, Plaintiffs admit that they each received actual notice, yet they have made no claim that they made any attempt to respond to the notice. Plaintiffs' due process claims, accordingly, should be dismissed as a matter of law.

### C.  Plaintiffs' Claims Should Be Dismissed for Additional Reasons

The claims of several Plaintiffs—Montufar, Velasquez, and Kyriakakis—all fail to state a claim for additional reasons specific to each Plaintiff.

#### 1.  *Rooker-Feldman* bars the Court from hearing Montufar and Velasquez's claim.

This Court lacks jurisdiction over Montufar and Velasquez's claim because Plaintiffs were parties to a prior state-court proceeding in which judgment for possession was issued against them and in favor of defendant Fannie Mae. The *Rooker-Feldman* doctrine divests "lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court." *Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 64 (1st Cir. 2018). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). If a party feels wronged by a decision in state court, that party has an opportunity for "reversal or modification in an appropriate and timely appellate proceeding." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923). However, "[a]mong federal courts, the *Rooker* Court clarified, Congress had empowered only [the U.S. Supreme] Court to exercise appellate authority 'to reverse or modify' a state-court judgment." *Exxon Mobil Corp.*, 544 U.S. at 284 (quoting *Rooker*, 263 U.S. at 416).

In *Klimowicz*, 907 F.3d at 64, the plaintiff borrower was the losing party to an eviction action that her foreclosing mortgagee had initiated in the Massachusetts Housing Court. Following entry of judgment, the borrower filed a new lawsuit in the Massachusetts federal court to challenge the

foreclosure, among other claims. *Id.* The First Circuit affirmed dismissal because the federal suit

sought to vacate and set aside the foreclosure, which "would necessarily invite the district court to

review, reject and reverse the state court's rulings." *Id.* at 66. The borrower argued that she should

be allowed to proceed on federal claims arising from legal theories not presented in the state courts,

but the First Circuit rejected the argument:

> This is magical thinking: a plaintiff cannot escape the *Rooker-Feldman*
> bar through the simple expedient of introducing a new legal theory in
> the federal forum that was not broached in the state courts. Put
> simply, a federal court's application of the *Rooker-Feldman* doctrine is
> not contingent upon an identity between the issues actually litigated
> in the prior state-court proceedings and the issues proffered in the
> subsequent federal suit. Instead, the critical datum is whether the
> plaintiff's federal suit is, in effect, an end run around a final state
> court judgment.

*Id.* (internal citations omitted).[7]

In *Fannie Mae a/k/a Federal National Mortgage Ass'n v. Ruben Velasquez, et al.*, 6CA-2016-04256,

the Sixth Division District Court entered final judgment against Montufar and Velasquez ratifying

Fannie Mae's foreclosure on the Velasquez Montufar Property by granting possession to Unit 2

arising out of the foreclosure deed at issue in this case. Tieger Decl., Ex. E (Unit 2 Eviction

Judgment). The docket indicates that the district court's grant of possession was affirmed on *de novo*

---

[7] Courts in other circuits have uniformly denied jurisdiction for contested foreclosure actions filed in federal court following a state court judgment. *See, e.g., Williams v. HSBC Bank USA, N.A.*, 681 Fed. Appx. 693 (10th Cir. 2017) (applying *Rooker-Feldman* to dismiss borrower's case because claims targeted harm allegedly caused by state-court judgment); *Taylor v. Fannie Mae*, 374 F.3d 529 (7th Cir. 2004) (holding all of borrower's claims in contested foreclosure action were inextricably intertwined with state-court judgment of foreclosure); *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373 (D.D.C. 2015) (*Rooker-Feldman* doctrine barred plaintiff from collateral attack of state-court possession judgment ratifying foreclosure and sale of property); *Figueroa v. MERSCORP, Inc.*, 766 F. Supp. 2d 1305 (S.D. Fla. 2011) (dismissing plaintiffs' purported class action seeking monetary relief in label because whole purpose of suit was to stop an undue foreclosure judgment); *Saunders v. Rockville Bank*, C.A. No. 3:13-CV-01612, 2014 U.S. Dist. LEXIS 184582, at *17-*18 (D. Conn. Sept. 10, 2014) ("[T]o the extent Plaintiff has any claims against the WRF defendants, those claims arise either from the state court foreclosure action, or the state court eviction action.").

appeal to the Rhode Island Superior Court.[8]  Similarly, in *Federal National Mortgage Ass'n v. Velasquez*, 6CA-2016-04648, the Sixth Division District Court entered final judgment against Montufar and Velasquez with respect to Unit 1 of the Velasquez Montufar Property.  Tieger Decl., Ex. E (Unit 1 Eviction Judgment).

Plaintiffs had every right, opportunity and venue to challenge Fannie Mae's foreclosure in prior proceedings.  In fact, the district court dockets reflect that Montufar and Velasquez filed an answer to Fannie Mae's complaint in each eviction action, and they were represented by the attorney who represents them in the instant matter.  Plaintiffs' pursuit of relief through this action operates as an "end run around" a final state-court judgment ratifying Fannie Mae's foreclosure.  *See Klimowicz*, 907 F.3d at 66.  Regardless of whether Plaintiffs claim due process violations, allege errors in the foreclosure, or complain about the process of pre-foreclosure mediation, this remedial relief demands the Federal Court's review and reversal of Rhode Island state-court findings.  Consequently, the *Rooker-Feldman* doctrine precludes rehearing Montufar and Velasquez's appeal of judgment for possession entered and affirmed in the state courts, and this Court must dismiss Montufar and Velasquez from this putative class action for lack of jurisdiction.

> ### 2.   Res Judicata bars Montufar and Velasquez's claim because they had the opportunity to litigate the validity of the foreclosure in the contested eviction actions.

Even if this Court elected to hear Montufar and Velasquez's claim notwithstanding lack of jurisdiction under *Rooker-Feldman*, the Court should dismiss the action under the doctrine of *res judicata* because these Plaintiffs pursue claims they could have raised in their prior contested eviction actions.[9]  Under the doctrine of *res judicata*, a party is prohibited from re-litigating claims that were—

---

[8] *Fed. Nat. Mortg. Ass'n v. Malinou*, 101 A.3d 860, 866 (R.I. 2014) ("[I]t is well established that a party who stipulates to judgment in the District Court is entitled to appeal that judgment to the Superior Court for a trial *de novo*." (citing *Harris v. Turchetta*, 622 A.2d 487, 490 (R.I.1993))).

[9] The defense of *res judicata* may be properly adjudicated on a motion to dismiss for failure to state a claim. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

or could have been—raised in a prior adjudicated action. *Haag v. United States*, 589 F.3d 43, 45 (1st Cir. 2009). The Rhode Island Supreme Court has adopted a transactional approach to *res judicata*, which establishes a bar to all claims arising from the same transaction or series of transactions, including those claims that a complainant could have raised.[10] *El Gabri v. Lekas*, 681 A.2d 271, 275 (R.I. 1996). To succeed on a defense of *res judicata*, a defendant must demonstrate three elements: (1) the parties to the second action are identical to, or in privity with, the parties to the first action; (2) the claims in the second action arise out of "the same transaction or series of transactions" that gave rise to the first action; and (3) the judgment in the first action is final. *E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark*, 635 A.2d 1181, 1186 (R.I. 1994). Here, a review of these three elements demonstrates that the final judgments entered in the state-court eviction proceedings bar Montufar and Velasquez's instant claims.

*First*, the allegations of the Amended Complaint establish the identity of parties between this case and the prior adjudicated eviction actions. "Determining whether there is 'identity of parties' requires resolving 'whether the parties to this second action are identical to *or in privity* with the parties involved in the [prior action].'" *Reynolds v. First NLC Fin. Servs., LLC*, 81 A.3d 1111, 1115 (R.I. 2014) (emphasis added) (quoting *E.W. Audet & Sons, Inc.*, 635 A.2d at 1186). Privity exists when "there is a commonality of interest between the two entities and when they sufficiently represent each other's interests." *Lennon v. Dacomed Corp.*, 901 A.2d 582, 591 (R.I. 2006) (internal quotation marks omitted).

Here, Montufar, Velasquez and Fannie Mae were all parties to the state eviction actions and are now parties to this action. Plaintiffs also name FHFA and Fannie Mae's mortgage loan servicer,

---

[10] Due to the fact that a final judgment previously entered against Montufar and Velasquez in a Rhode Island state court eviction action, the preclusive effect of that judgment is governed by Rhode Island's *res judicata* principles, rather than an application of the federal *res judicata* principles. *Compare Johnson v. SCA Disposal Servs. of New England, Inc.*, 931 F.2d 970, 974 (1st Cir. 1991) (noting federal law governs preclusive effect of prior federal judgments), *with Russo v. Baxter Healthcare Corp.*, 919 F. Supp. 565, 568 (D.R.I. 1996) (applying Rhode Island law regarding *res judicata* principles based on prior judgment in Rhode Island Superior Court).

Seterus, as defendants. Assuming the truth of the allegations for purposes of this Motion,[11]

Plaintiffs establish the necessary privity by alleging that:

> As a result of FHFA's conservatorship of Fannie Mae, … FHFA directly controls and operates Fannie Mae with all the powers of the shareholders, directors, and officers of Fannie Mae, owns title to all the assets of Fannie Mae, and has broad powers over all business of Fannie Mae. …
>
> Fannie Mae enters into contracts with mortgage servicers, which includes a "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.

Am. Compl. ¶¶ 33 & 42. Plaintiffs' Amended Complaint avers that these entities—Fannie Mae,

FHFA, and Seterus—are so inextricably linked in order to sustain their due process claims that

Montufar and Velasquez cannot now claim lack of privity among the parties. *See Bellot v. Wells Fargo*

*Bank*, *N.A.*, No. H-13-2014, 2014 U.S. Dist. LEXIS 73878, at *4 (S.D. Tex. May 13, 2014). As a

result, Plaintiffs' allegations concerning FHFA and Seterus establish the required identity of parties.

*Second*, Plaintiffs' eviction action involved the same identity of issues to establish the second

element of the doctrine. Adopting the Restatement (Second) Judgments' transactional rule

approach, the Rhode Island Supreme Court has explained "'[t]he present trend is to see [a plaintiff's]

claim in factual terms and to make it coterminous with the transaction regardless of the number of

substantive theories, or variant forms of relief flowing from those theories, that may be available to

the plaintiff.'" *Plunkett v. State*, 869 A.2d 1185, 1189 (R.I. 2005) (quoting *Restatement (Second) Judgments*

§ 24, cmt. *a*). In *Koolen v. Mortgage Electronic Registration Systems Inc.*, 953 F. Supp. 2d 348 (D.R.I.

2013), a court in this District applied Rhode Island's transactional rule to find that the claims

asserted in the original and subsequent suits were sufficiently identical to establish *res judicata*. *Id.* at

---

[11] While Plaintiffs' allegations are accepted as true for a motion to dismiss, FHFA and Fannie Mae together do not concede any statements regarding the conservatorship relationship, and further, represent they do not deem it necessary for the Court to decide these issues for purposes of the instant Motion.

352.  Even though plaintiff's legal theories in the federal court action differed from the original suit commenced in the Rhode Island district court, Judge McConnell concluded that the transaction behind each of the federal court claims arose out of the same transaction in the prior state court action, namely plaintiff's grant of a mortgage on his property.  *Id.* at 350, 352-53; *see also Garganta v. Mobile Vill., Inc.*, 730 A.2d 1, 2-4 (R.I. 1999) (holding that *res judicata* extends beyond issues actually raised in prior suit and encompasses those issues that might have been tried); *Parra v Mortg. Elec. Registration Sys., Inc.*, No. PC 2011-1828, 2013 WL 1387030, at *3 (R.I. Super. Apr. 1, 2013) (applying transactional rule to conclude *res judicata* barred action because borrowers could have raised invalidity of foreclosure in district court or on appeal following entry of judgment for possession).

This action raises an identity of issues under the transactional rule because Montufar and Velasquez could have litigated their subject claims in the state-court eviction actions.  Fannie Mae commenced the eviction action to secure possession of the Velasquez Montufar Property following foreclosure and purchase at a May 16, 2014 auction, obtained final judgment, and the Superior Court affirmed on appeal.  This action arises out of the very same foreclosure, which Montufar and Velasquez now claim violated their constitutional right to due process under the Fifth Amendment. Plaintiffs may argue jurisdictional limitations on state district court summary process action,[12] yet Montufar and Velasquez could have challenged the constitutionality of the foreclosure, or any other aspect of Fannie Mae's foreclosure on *de novo* review of the eviction actions in the Rhode Island Superior Court.  *See Garganta*, 730 A.2d at 4-5.  Plaintiffs had the ability to present their claims and defenses to foreclosure and eviction in the actions filed in the Rhode Island District Court, or on a *de novo* appeal to the Rhode Island Superior Court.  Plaintiffs' failure to pursue these defenses from judgment and on appeal forecloses their right to raise these claims in this secondary action.

---

[12] The Rhode Island Superior Court has exclusive jurisdiction over equitable and declaratory judgment actions.  R.I. Gen. Laws §§ 8-2-3, 9-30-1 .

*Third*, the stipulated judgment entered in the eviction action constitutes a final judgment. The Rhode Island Supreme Court has instructed that "a '[d]ismissal with prejudice … constitutes a full adjudication of the merits as if the order had been entered subsequent to trial.'" *Lennon*, 901 A.2d at 592. A stipulated judgment and dismissal has the same effect. *Id.*; *see also In re Stanley*, 152 B.R. 416 (Bankr. D.R.I. 1993). In this case, the stipulated judgment entered in the prior eviction action, whether construed as a settlement, stipulated judgment, or stipulated voluntary dismissal by Fannie Mae, constitutes a final judgment on the merits for purposes of *res judicata*. This conclusion is bolstered by Velasquez and Montufar's appeal to the Rhode Island Superior Court, which affirmed the judgment following *de novo* review.

In sum, review of Plaintiffs' Amended Complaint demonstrates all three elements necessary to establish *res judicata* and bar Montufar and Velasquez's claims.

### 3.   Failure to name necessary and indispensable parties bars Montufar and Velasquez's claim

The Court should dismiss the Amended Complaint due to Plaintiffs' failure to name necessary and indispensable parties to this putative class action under Fed. R. Civ. P. 19. Fed. R. Civ. P. 12(b)(7) permits the Court dismiss a case for failure to join under Rule 19 on determination that a party is necessary but is not feasibly joined to the case. Fed. R. Civ. P. 19; *see Z & B Enters., Inc. v. Tastee-Freez Int'l, Inc.*, 162 Fed. Appx. 16, 18 (1st Cir. 2006); *see also Rosano v. Mortg. Elec. Registration Sys., Inc.*, 91 A.3d 336 (R.I. 2014) (applying the comparable state civil procedure rules to affirm dismissal of a contested foreclosure action in which the borrower failed to name the current title holder to the property.).

Three criteria determine whether a person is necessary under Fed. R. Civ. P. 19(a): if "in that person's absence, the court cannot accord complete relief among existing parties" or that the person's absence "may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of the interest." Here, Plaintiffs pursue declaratory relief to void a foreclosure of the Velasquez Montufar property, but the property's record title demonstrates a post-foreclosure sale and mortgage to parties who are not and cannot join this putative class action. Following foreclosure, Fannie Mae sold the property to Jovo Montufar ("Jovo"), and Jovo borrowed money from Primary Residential Mortgage, Inc. ("Primary Residential") secured by a mortgage executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Primary Residential. *See* Tieger Decl., Ex. F (Jovo Montufar Deed); Tieger Decl., Ex. G (Jovo Montufar Mortgage). Jovo, Primary Residential and MERS are all necessary parties to this suit under Rule 19 given that their property interests unquestionably would be harmed upon any finding of relief in favor of Plaintiffs. As a result, Plaintiffs' failure to name these additional necessary parties requires dismissal pursuant to Rule 12(b)(7).

### 4. Judicial Estoppel bars Kyriakakis's claim because he surrendered the property to his creditor as part of a bankruptcy petition and to obtain discharge of debt.

Kyriakakis is estopped from challenging Fannie Mae's foreclosure because he surrendered any claim to the property in connection with a Chapter 7 bankruptcy petition. Judicial estoppel is an equitable doctrine that prevents a litigant from pursuing a claim that is inconsistent with a prior litigated position. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 32 (1st Cir. 2018); *Knowlton v. Shaw*, 704 F.3d 1, 10 (1st Cir. 2013). Three factors determine whether to apply judicial estoppel: (1) a "party's later position must be clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51.

All three factors are present in this case.  Kyriakakis' suit asserts a right to the property located at 51 Tilden Street, Cranston, Rhode Island.  Kyriakakis, however, surrendered the Tilden Street property as part of his Chapter 7 petition, and the United States Bankruptcy Court trustee subsequently abandoned the asset in *In re Kyriakakis*, 16-bk-10323.  Kyriakakis filed a February 29, 2016 petition, which identified an ownership interest in the Tilden Street property, disclosed a claim in the amount of $229,406 on the property made by Ocwen Loan Servicing in connection with a 1st Mortgage arising from a debt incurred on April 1, 2013, and stated an intent to surrender the property.  Tieger Decl., Ex. H (Kyriakakis Bankruptcy Petition) at 11, 19, 55.  Kyriakakis executed the Statement of Intention under "penalty of perjury" and a declaration that he "indicated his intention about any property of my estate that secures a debt … ." *Id.* at 56.  On January 3, 2017, the Chapter 7 Trustee in Kyriakakis' bankruptcy submitted a report to the court of no distribution, which abandoned assets valued at $374,953,[13] and which scheduled the discharge of claims valued at $624,420.09 without payment.  Tieger Decl., Ex. I (Kyriakakis Bankruptcy Docket) at 5.  On February 3, 2017, the Bankruptcy Court entered an order discharging Kyriakakis. *Id.*  The bankruptcy court's docket, trustee report and final order demonstrate Kyriakakis' surrender of the Tilden Street property in exchange for a discharge of his debts.

Now, Kyriakakis alleges ownership in the Tilden Street property and challenges Fannie Mae and Mr. Cooper's foreclosure sale. Am. Compl. ¶ 109.  While no Rhode Island decisions address the preclusive effect of a debtor abandoning property in order to receive a bankruptcy discharge on a subsequently filed contested foreclosure action, courts in other jurisdictions have precluded such litigation under judicial estoppel. *Failla v. Citibank*, 838 F.3d 1170 (11th Cir. 2016); *Ibanez v. U.S. Bank Nat'l Ass'n*, 856 F. Supp. 2d 273 (D. Mass. 2012); *Bowman v. U.S. Bank Nat'l Ass'n*, C.A. No.

---

[13] The assets Kyriakakis intended to abandon were the Tilden Street property valued at $193,151, property located at 70 Sharon Street, Cranston, Rhode Island and valued at $169,802, and a 2012 Hyundai Elantra with an expired lease valued at $12,000.

1:12-cv-04263, 2013 U.S. Dist. LEXIS 149660 (N.D. Ga. Aug. 1, 2013). In *Ibanez*, 856 F. Supp. 2d at 274-75, the Massachusetts federal court dismissed a borrower's wrongful foreclosure action pursued on property he had surrendered in bankruptcy. The borrower filed a bankruptcy petition in which he indicated an intent to surrender property, subsequently obtained a discharge of all debts, and then filed a lawsuit claiming that he was deprived the use, possession and value of the same property he surrendered. *Id.* The federal court determined that the "gist" of borrower's action was to invoke "the wrongful foreclosure of the same property he surrendered to the bankruptcy court in exchange for the discharge of his debts." *Id.* at 275. According to the court, "[t]his, equity will not permit." *Id; see also Failla*, 838 F.3d at 1177 (Eleventh Circuit concluded that while a creditor must take some legal action to recover real property following the bankruptcy surrender, debtors who have surrendered the property "must get out of the creditor's way.").

Here, Kyriakakis's asserted ownership and challenge to foreclosure is contradicts his earlier surrender of the Tilden Street property to the bankruptcy trustee and the trustee's abandonment of the property to Kyriakakis' creditors. More importantly, Kyriakakis challenges foreclosure over property he surrendered under penalties of perjury and in exchange for a discharge of debt. Now that the Bankruptcy Court has discharged the debt Kyriakakis owed Fannie Mae in exchange for abandonment of the property, judicial estoppel prohibits his challenge to foreclosure in this action.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

By Its Attorneys,


*/s/ Noah A. Levine*
Noah A. Levine (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8875
Facsimile: (212) 230-8888
noah.levine@wilmerhale.com

Alison Burton (*pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6809
Facsimile: (617) 526-5000
alison.burton@wilmerhale.com

*/s/ Ethan Z. Tieger*
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com


Dated:      February 19, 2019

## CERTIFICATE OF SERVICE

I, Ethan Z. Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on February 19, 2019.

/s/ Ethan Z. Tieger
Ethan Z. Tieger